## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF KANSAS

KENNETH L. DOZIER,

      Plaintiff,

      v.                                       Case No.  06-2169-JWL

CITY OF OVERLAND PARK,
KANSAS, and PENNY POSTOAK
FERGUSON

      Defendants.

## MEMORANDUM & ORDER

Plaintiff Kenneth L. Dozier brings this suit, which arose out of the events surrounding the termination of his employment with the City of Overland Park ("the City"). Plaintiff asserts that the City failed to follow its own post-termination proceedings, which violated his due process rights under the 14th Amendment of the United States Constitution and Section 18 of the Kansas Bill of Rights. Mr. Dozier raises his claims against the City, as well as Deputy City Manager Penny Postoak Ferguson, who presided over his post-termination hearing. He is suing Ms. Ferguson both in her official capacity and individual capacity. This matter is now before the court on the defendants' joint motion to dismiss for failure to state a claim upon which relief can be granted (doc. 4). For the reasons explained below, the motion to dismiss is granted as to all claims in all four counts, but subject to the request for leave to amend, which is granted as to Count IV as set forth below.

## I.    BACKGROUND

This suit stems from plaintiff's employment with the City.  He worked as a code enforcement specialist from March 13, 2000 until July 19, 2005.  Eleven days prior to his termination, the City put Mr. Dozier on a leave of absence for alleged misconduct with a citizen during an inspection.  After being informed of his termination nearly two weeks later, Mr. Dozier sought a pre-termination hearing pursuant to the City's employee handbook.  Mr. Dozier provided Roger Peterson, the director of planning and development services, with timely written defenses contesting the City's termination decision.  Mr. Peterson issued a written response to these defenses stating that the termination would stand.  Mr. Dozier then filed a request with the City Manager, John Nachabar, for a post-termination hearing by an impartial tribunal.  That request was granted, and a hearing took place on August 11, 2005.

The tribunal, which consisted only of Ms. Ferguson,  upheld the decision to terminate Mr. Dozier.  But Mr. Dozier challenges several aspects of the tribunal proceeding, which he alleges was not impartial.  After both sides rested their cases on August 11, 2005, Mr. Dozier contends that he did not receive notification of a decision within three days, as mandated by the employee handbook.  Instead, he alleges that he was not notified until five days after the hearing, on August 16, 2005, when he was informed that Ms. Ferguson would seek additional evidence.[1]  Mr. Dozier objected to officials re-opening the hearing and consulting the city manager for administrative clarification.  To this end, he contends that the city manager was not impartial, given that the city

---

[1] The handbook rules provided by Mr. Dozier state that notification shall be given within "three (3) workdays."  Because Saturday and Sunday, August 13-14, 2005, were not workdays, Mr. Dozier's allegation of late notification is dubious.

2

manager was in Mr. Dozier's direct line of supervision.   Three days after the second hearing took place on August 19, 2005, the City notified Mr. Dozier that it had upheld its decision to terminate his employment.

The defendants now move to dismiss all of Mr. Dozier's claims for failure to state a claim upon which relief can be granted.   They argue that the City had no implied employment contract with Mr. Dozier because under its city manager form of government, all employees are at-will. They contend that the City, by statute, is prevented from entering into an implied employment contract with Mr. Dozier or any other employee, regardless of its employee manual or any other basis.   Thus, the defendants argue that (1) Mr. Dozier had no protected property interest in his employment; (2) he could be terminated without cause at any time for any reason; and (3) his due process and wrongful termination claims should therefore be dismissed.   Finally, the defendants assert that Ms. Ferguson is entitled to qualified immunity against suit in her individual capacity.

In response, Mr. Dozier asserts that the City granted him a protected property interest in his continued employment, which afforded him due process rights.   Mr. Dozier further alleges that the tainted post-termination proceedings violated these due process rights. He contends that Ms. Ferguson is not entitled to qualified immunity.   In addition, Mr. Dozier seems to indicate that his section 1983 claim against Ms. Ferguson is based on more than his allegation of an implied contract.   In sum, Mr. Dozier asks that his claims not be dismissed, or in the alternative, that the court grant him leave to amend his complaint.

## II.   LEGAL STANDARD FOR A MOTION TO DISMISS

3

The court will dismiss a cause of action for failure to state a claim only when "it appears beyond a doubt that the plaintiff can prove no set of facts in support of his [or her] claims which would entitle him [or her] to relief," *Aspenwood Investment Co. v. Martinez*, 355 F.3d 1256, 1259 (10th Cir. 2004) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)), or when an issue of law is dispositive. *Neitzke v. Williams*, 490 U.S. 319, 326 (1989). The court accepts as true all well-pleaded facts, as distinguished from conclusory allegations, and all reasonable inferences from those facts are viewed in favor of the plaintiff. *Adams v. Kinder-Morgan, Inc.*, 340 F.3d 1083, 1088 (10th Cir. 2003). The issue in resolving a motion is "not whether [the] plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

## III.   ANALYSIS

### Count I - Violation of the Kansas Constitution

In Count I, plaintiff alleges a violation of Section 18 of the Kansas Bill of Rights. For support, he directs the court to *Prager v. State, Dept. of Revenue*, 271 Kan. 1 (2001). That case, however, is clear authority that Section 18 of the Kansas Bill of Rights does not provide a private cause of action. The Kansas Supreme Court in *Prager* first explained that "[t]he language of the Kansas Constitution may be worded more broadly than the United States Constitution, but we have treated both provisions as 'generally considered coextensive.'" 271 Kan. at 37 (quoting *State v. Russell*, 227 Kan. 897, 899 (1980)).   Thus, because they are coextensive, any state law claim would be subsumed by his federal constitutional claim. In addition, however, "[s]ection 18 [of the

4

Bill of Rights] does not create any new rights of action; it merely requires the Kansas courts to be open and afford a remedy for such rights as are recognized by law." *Id*. at 40-41.  Plaintiff also alleges that his state constitutional claim is actionable under § 1983, but that is incorrect. "Section 1983 does not . . . provide a basis for redressing violations of state law, but only for those violations of federal law done under color of state law." *Jones v. City and County of Denver*, 854 F.2d 1206, 1209 (10th Cir. 1988) (quoting *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)).  Thus, for all of the above reasons, the motion to dismiss Count I is granted.

**Count II - Procedural Due Process Violation under the Fourteenth Amendment**

In Count II, plaintiff alleges a due process violation based on the City's failure to abide  by the regulations in its own handbook when it terminated Mr. Dozier from his employment.  Notably, all of the alleged violations in Count II relate exclusively to the procedural aspects of the administrative hearings surrounding his termination.[2]  The court underscores that "[p]laintiff does not argue that [he] was deprived of a liberty interest.  Our discussion therefore pertains only to plaintiff's property interest in continued employment."  *Archuleta v. Colorado Dept. of Institutions, Div. of Youth Services*, 936 F.2d 483, 489 (10th Cir. 1991).

Mr. Dozier asserts a procedural due process violation under the Fourteenth Amendment based on the inadequacy of the post-termination proceedings conducted by the City.  "The Due

---

[2] The defendants raised this exact point in footnote 3 of their brief supporting their motion to dismiss, where they explicitly stated that plaintiff's complaint does not allege a liberty interest.  Plaintiff did not respond to the defendants' argument.  Plaintiff makes an unfounded reference in his response brief to a substantive due process claim under Count I, but he provides absolutely no basis for the court to analyze that claim.

Process clause of the Fourteenth Amendment does not prohibit the government from depriving an individual of 'life, liberty, or property'; it protects against governmental deprivations of life, liberty, or property 'without due process of law.'" *Farthing v. City of Shawnee*, 39 F.3d 1131, 1135 (10th Cir. 1994) (quoting U.S. Const. amend. XIV)). To establish a cognizable claim, then, Mr. Dozier must first establish a protected property interest. *Anglemyer v. Hamilton County Hospital*, 58 F.3d 533, 536 (10th Cir. 1995).

The court applies a two-step inquiry: (1) did Mr. Dozier "possess a protected interest such that the due process protections were applicable; and if so, then (2) was [he] afforded an appropriate level of process." *Farthing v. City of Shawnee*, 39 F.3d 1131, 1135 (10th Cir. 1994). For the court to even assess the level or fairness of the process afforded, Mr. Dozier must first prove that he has "a protected interest such that the due process protections were applicable"; only after meeting the first step does the court decide whether he "was afforded an appropriate level of process." *Id.* "In light of this framework, we turn to the threshold issue of whether Mr. [Dozier] possessed a protected property interest." *Id.*

Although Count II is asserted under the Fourteenth Amendment and section 1983, "the issue of whether [Mr. Dozier] possessed a protected property interest must be determined by reference to state law." *Id.* (citing *Bishop v. Wood*, 426 U.S. 341, 344 (1976)). In Kansas, "public employment is presumptively at-will." *Id.* at 1136; *see also Anglemyer*, 58 F.3d at 537 ("Like most states, Kansas historically has followed the common law doctrine of employment at-will. Employees are considered to be at-will in the absence of an express or implied contract"). Ultimately, in making this determination, "the touchstone is whether, under state law, the

6

employee has a 'legitimate claim of entitlement' in continued employment, as opposed to a 'unilateral expectation' or 'an abstract need or desire' for it." *Id.* (quoting *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 571 (1972)).

The defendants argue that under a substantial body of on-point precedent, Mr. Dozier could not, as a matter of law, have entered into an implied contract with the City. They note that the City is a municipality organized under Chapter 12 of the Kansas Statutes Annotated, see K.S.A. 12-1001, *et. seq.*, and that the City also has adopted a city manager form of government. *See* City of Overland Park Charter Ordinance No. 84.[3] By statute, "[c]ities operating under this form of government are subject to the provisions of the City Manager Plan Act, K.S.A. 12-1001 *et seq.*" *Riddle v. City of Ottawa*, 12 Kan. App.2d 714, 717 (1988). The relevant statute, K.S.A. § 12-1014, "gives the city manager the power to 'appoint and remove all heads of departments, and all subordinate officers and employees of the city.'" *Id.* (quoting K.S.A. § 12-1014)). More importantly, § 12-1014 does not provide any limitation on terminating any employee at any time.[4] In other words, it "does not provide for any term of office for city employees. Additionally, the statute does not place any limitation on the city manager's power to remove an employee from

---

[3] In the brief supporting their motion to dismiss, the defendants state that Ordinance No. 84 incorporates nearly the exact language of K.S.A. § 12-1014. Plaintiff did not challenge this characterization.

[4] The exact language of K.S.A. § 12-1014 and the public policy rationale for enforcing it are found in a detailed analysis in *Cragg v. City of Osawatomie*, 1996 WL 707108, at * 5-6 (D. Kan. 1996), rev'd in part on other grounds, 143 F.3d 1343 (10th Cir. 1998). The undersigned further explored this exact issue in *Warren v. City of Junction City*, 176 F. Supp. 2d 1118, 1125-26 (D. Kan. 2001).

7

office. . . . There is no requirement in 12-1014 that a city manager have or give cause before he or she can remove/suspend a city employee from office." *Riddle*, 12 Kan. App.2d at 717.

In *Riddle*, the plaintiff attempted to argue that the City of Ottawa's personnel rules and regulations created a protected property interest. *Id*. at 718. The Kansas Court of Appeals, however, rejected his claim: "These rules and regulations are not state law, however, and cannot override the clear provisions of K.S.A. 12-1014. . . ." *Id*. The Tenth Circuit has affirmed that analysis:

> Moreover, our conclusion is supported by the Court of Appeals of Kansas' decision in *Riddle*, where the court concluded a public safety officer, employed by a municipal government under a city manager form of government, did not possess a constitutionally protected property interest in his employment because the city manager's power of removal was unlimited. *Riddle*, 754 P.2d at 468-69. *Riddle* is indistinguishable in any material way from the case at bar and we conclude it supports our interpretation of Kansas law that the city manager was empowered to remove [plaintiff] without cause.

*Farthing*, 39 F.3d at 1137-38.

This court, moreover, has applied the analysis in *Riddle* and its progeny on repeated occasions, finding each time that under a city manager form of government, all employees are terminable at-will by statute, which precludes any basis for a protected property interest. The undersigned already has synthesized the Kansas cases and rejected the exact claim plaintiff makes here:

> The issue of whether under Kansas law a city manager working under a city manager form of government is permitted to enter into an implied contract with an employee was previously decided by this court in *Cragg v. City of Osawatomie*, Kan., No. 95-2492-JWL, 1996 WL 707108 (D. Kan. Nov. 8, 1996), partially rev'd on other grounds, 143 F.3d 1343 (10th Cir. 1998). In that case, this court approved the reasoning in *Dehart v.City of Manhattan*, 942 F. Supp. 1395 (D. Kan.1996), and the Kansas Court of Appeals cases cited therein. In *Cragg*, this court stated:

> "Reading *Riddle* and *Wiggins* together, then, Kansas law gives a city manager the power to remove employees without cause, and that power cannot be abridged by contract, implied or written, because the city manager lacks the authority to enter into a contract of employment for a specific term." 1996 WL 707108, at *6. Similarly, in *Dehart* Judge Rogers stated: "The implication . . . is that in cases where K.S.A. 12-1014 applies an employee is foreclosed under Kansas law from asserting a property interest based upon either a written contract or an implied contract." 942 F. Supp. at 1399.

*Warren v. City of Junction City*, 176 F. Supp. 2d 1118, 1125 (D. Kan. 2001).

In their brief for their motion to dismiss, the defendants cited all of the cases cited in *Warren*, and there is no reason for the undersigned to repeat the court's earlier analysis from those cases. Plaintiff simply does not offer any meaningful challenge to the myriad of opinions conclusively rejecting any procedural due process claim under the allegations of this case. In plaintiff's only argument regarding these cases, he attempts to distinguish *Riddle* and its progeny based on a distinction between a subordinate employee and a department head. The court rejects that distinction for several reasons. First, the asserted distinction is not supported by the language in *Riddle* or its progeny. There is nothing to suggest that a department head is materially different than a subordinate employee; the language in *Riddle* speaks to all employees. *See, e.g.*, *Riddle*, 12 Kan. App. 2d at 717 ("There is no requirement in 12-1014 that a city manager have or give cause before he or she can remove/suspend a city employee from office."). Second, the undersigned previously has held that the removal power applies to all employees. *See Warren*, 176 F. Supp. 2d at 1126 ("Thus, the holding applies to all public employees regardless of the governing statute."). Ultimately, then, the court rejects the only argument advanced by plaintiff for not applying the immense body of precedent directly foreclosing his claim. *See also Najim*

9

*v. City of Wichita*, 2005 WL 2043426 (D. Kan. 2005) (denying the exact claim raised in this count based on the guidance of *Riddle*, *Wiggins*, *Dehart*, *Cragg* and *Warren*).

In sum, the court concludes that Mr. Dozier was an at-will employee of the City and had no constitutionally protected property interest in continued employment.   As the undersigned held in *Cragg*: "Reading *Riddle* and *Wiggins* together, then, Kansas law gives a city manager the power to remove employees without cause, and that power cannot be abridged by contract, implied or written, because the city manager lacks the authority to enter into a contract of employment for a specific term."   1996 WL 707108, at * 6, rev'd in part on other grounds, 143 F.3d 1343 (10th Cir. 1998).   Thus, regardless of plaintiff's factual allegations, he was barred by statute from entering into an implied contract with the City.   The court, therefore, concludes that his claim fails as a matter of law, and the court grants the motion to dismiss Count II.

## Count III - Wrongful Termination

In Count III, Mr. Dozier asserts a claim for wrongful termination.   The linchpin of that claim, however, is an implied contract.   And as set forth in the court's analysis of Count II, plaintiff was barred by § 12-1014 from ever entering into an implied contract with the City.   Thus, as Judge Brown held when deciding this identical issue: "Plaintiff has made no allegation that the tenure of his office was declared by the Kansas Constitution or by statute.   As such, he held the position at the pleasure of the appointing authority, and he is precluded as a matter of law from recovering on his claim that the City's personnel manual constituted an implied contract granting him a right to continued employment."   *Najim v. City of Wichita*, 2005 WL 2043426, at * 4 (D. Kan. 2005).

Because the court finds, as a matter of law, that plaintiff was barred by statute from entering into an employment contract with the City, the court grants the motion to dismiss Count III.

**Count IV - Section 1983 Claim Against Ms. Ferguson**

Plaintiff claims in Count IV that Ms. Ferguson violated his constitutional rights under section 1983 by improperly conducting the hearings surrounding his termination from employment with the City. Specifically, he alleges that she did so by (1) consulting an outside person for advice; (2) consulting the City Manager, who was in plaintiff's direct line of supervision; (3) failing to render her decision in accordance with City policy; (4) soliciting evidence from witnesses who did not appear at the hearing; (5) considering impermissible evidence at the hearing; and (6) reconvening the hearing to hear additional evidence over plaintiff's objection. Notably, all of these specific alleged violations of his constitutional rights relate only to the procedural aspects of the administrative hearings surrounding his termination. As before, the court underscores that "[p]laintiff does not argue that [he] was deprived of a liberty interest. Our discussion therefore pertains only to plaintiff's property interest in continued employment." *Archuleta v. Colorado Dept. of Institutions, Div. of Youth Services*, 936 F.2d 483, 489 (10th Cir. 1991).

**A.      Individual Capacity Suit**

**1.      Qualified Immunity**

11

Ms. Ferguson alleges that she is entitled to qualified immunity regarding the suit against her in her individual capacity.[5]   When an official is sued in her individual capacity, qualified immunity is the touchstone defense.   It shields an official from civil liability so long as her conduct does not violate a clearly established statutory or constitutional right. Qualified immunity is not simply a defense to liability; it provides a blanket immunity from suit. *Douglas v. Dobbs*, 419 F.3d 1097, 1101 (10th Cir. 2005).

Qualified immunity recognizes the legitimate "need to protect officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority."   *Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982). It "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).   "This accommodation for reasonable error exists because 'officials should not err always on the side of caution' because they fear being sued." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991).   The court is bound by the "presumption in favor of immunity for public officials acting in their individual capacities." *Hidahl v. Gilpin County Dep't of Soc. Servs.*, 938 F.2d 1150, 1155 (10th Cir. 1991).

Deciding whether Ms. Ferguson retains qualified immunity requires a two-part analysis. The threshold question is, taken in the light most favorable to plaintiff, whether "the facts alleged show the officer's conduct violated a constitutional right."   *Saucier v. Katz*, 533 U.S. 194, 201

---

[5] Despite plaintiff's assertion otherwise, Ms. Ferguson is correct that qualified immunity is a relevant defense to a suit against an official sued her in individual capacity.  *See Beedle v. Wilson*, 422 F.3d 1059, 1069 (10th Cir. 2005) ("A qualified immunity defense is only available to parties sued in their individual capacity.").

(2001).   If there is no violation of a constitutional right, the analysis ends.  *Saucier*, 533 U.S. at

201.   If the factual allegations do amount to a constitutional violation, "the next, sequential step

is to ask whether the right was clearly established at the time of the defendant's unlawful conduct

such that a reasonable person in the defendant's position would have known that the alleged

conduct violated the federal right." *Id*.

### a.    No Constitutional Violation

Upon assertion of qualified immunity, "the burden shifts to the plaintiff to show that the

defendant is not entitled to that immunity." *Douglas v. Dobbs*, 419 F.3d 1097, 1100 (10th Cir.

2005); *see also Scott v. Hern*, 216 F.3d 897, 908-09 (10th Cir. 2000).   In this context, the

importance of immunity from suit places the burden on the plaintiff from the very inception to

establish the violation of established constitutional law.   A motion to dismiss for failure to state

a claim forces the plaintiff to establish the basis for relief; otherwise, the court must dismiss the

claim regardless of the stage of the proceedings:

> The complaint should include "all of the factual allegations necessary to sustain a
> conclusion that defendant violated clearly established law."   Thus, a defendant could,
> prior to filing an affirmative defense, challenge the complaint under Fed.R.Civ.P.
> 12(b)(6) on the ground that he or she is entitled to qualified immunity because the
> pleaded facts failed to show that his or her conduct violated clearly established law
> of which a reasonable person would have known. Similarly, the defendant could
> raise the immunity issue in a motion for summary judgment.   In either case, once
> the defense has been raised, the court must allow the plaintiff the limited
> opportunity allowed in Fed.R.Civ.P. 12(b)(6) and 56 to come forward with facts or
> allegations sufficient to show both that the defendant's alleged conduct violated the
> law and that that law was clearly established when the alleged violation occurred.
> Unless such a showing is made, the defendant prevails.

13

*Pueblo Neighborhood Health Centers, Inc. v. Losavio*, 847 F.2d 642, 645-46 (10th Cir. 1988) (internal citations omitted).

Against this backdrop, the court finds that plaintiff has not demonstrated a constitutional violation based on a protected property interest in his employment with the City. "As we are instructed by [the Supreme Court], we no longer merely assume that an individual has a protected property interest but, instead, determine whether such an interest exists as a threshold matter." *Federal Lands Legal Consortium ex rel. Robart Estate v. United States*, 195 F.3d 1190, 1195 (10th Cir. 1999). To ever demonstrate a constitutional violation under the allegations he has raised, plaintiff would first have to establish a protected property interest. *See Hennigh v. City of Shawnee*, 155 F.3d 1249, 1253 (10th Cir. 1998) ("To properly allege a violation of his procedural due process rights, Plaintiff must first demonstrate that he had a protected property or liberty interest . . . ."). "Property interests are not created by the Constitution, but rather by independent sources such as state law." *Brown v. New Mexico State Personnel Office*, 399 F.3d 1248, 1254 (10th Cir. 2005) (quoting *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985)). "In other words, '[property] interests attain . . . constitutional status by virtue of the fact that they have been initially recognized and protected by state law.'" *Veile v. Martinson*, 258 F.3d 1180, 1185 (10th Cir. 2001) (quoting *Paul v. Davis*, 424 U.S. 693, 710 (1976)).

Here, as a matter of state law, the court has held that plaintiff could not obtain an implied contract of employment with the City, which has a city manager form of government. In other words, he was precluded by state law from obtaining a protected property interest. Further, all of plaintiff's allegations relate to the procedural deficiencies of the administrative hearing he

14

received, but that inquiry relates to the second step.  Plaintiff has not cleared the first step of establishing a protected property interest.  Thus, the court never even reaches the inquiry of what process was due.  "Having concluded that [plaintiff] has failed to demonstrate a property interest . . . , we need go no further. . . ."  *Federal Lands Legal Consortium*, 195 F.3d at 1201.  The absence of a protected property interest vitiates any possible due process claim against Ms. Ferguson.  *See, e.g., Lee v. Board of County Com'rs of Arapahoe County*, 18 F. Supp. 2d 1143, 1165 (D. Colo. 1998) ("Accordingly, the court finds that plaintiff did not have a property interest in continued employment with the County so as to implicate the protections of the Fourteenth Amendment Due Process Clause. Plaintiff's due process claim should be dismissed against all defendants."); *Jackson v. Kansas County Ass'n Multiline Pool*, 2006 WL 963838, at *8 (D. Kan. 2006) ("Further, even if [plaintiff] had alleged a deprivation of property interest claim, his claim would fail [because] he cannot show that he has a property interest in continued employment when he is an at-will employee and he never entered into an implied contract of employment.").

### b.      Not Clearly Established

Even if plaintiff could clear the first hurdle by demonstrating a constitutional violation, he makes no effort to prove that Ms. Ferguson violated clearly established law. The court may not allow him to proceed past a motion to dismiss by making a general factual assertion of a constitutional violation that he hopes, at some point later in the case, to substantiate.  Ultimately, "[t]he question for the trial court to resolve is a legal one; the court cannot avoid the question by framing it as a factual issue." *Pueblo Neighborhood Health Center, Inc. v. Losavio*, 847 F.2d

642, 646 (10th Cir. 1988); *Lawmaster v. Ward*, 125 F.3d 1341, 1347 (10th Cir. 1997) (same).

Upon Ms. Ferguson raising qualified immunity as a defense, plaintiff was under an immediate duty

to identify a specific violation of clearly established law.   General allegations of substantive or

procedural due process rights or violations are insufficient to defeat a motion to dismiss:

> It is the plaintiff's burden to convince the court that the law was clearly established.
> In doing so, the plaintiff cannot simply identify a clearly established right in the
> abstract and allege that the defendant has violated it.   Instead, the plaintiff "must
> demonstrate a substantial correspondence between the conduct in question and prior
> law allegedly establishing that the defendant's actions were clearly prohibited."
> While the plaintiff need not show that the specific action at issue has previously
> been held unlawful, the alleged unlawfulness must be "apparent" in light of
> preexisting law. The "contours of the right must be sufficiently clear that a
> reasonable official would understand that what he is doing

violates that right."   If the plaintiff is unable to demonstrate that the law allegedly violated was clearly established, the plaintiff is not allowed to proceed with the suit.

*Hilliard v. City and County of Denver*, 930 F.2d 1516, 1518 (10th Cir. 1991) (internal citations omitted); *see also Herring v. Keenan*, 218 F.3d 1171, 1175-76 (10th Cir. 2000) (same).

The doctrine of qualified immunity protects public officials performing discretionary functions unless their conduct violates "'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Jantz v. Muci*, 976 F.2d 623, 627 (10th Cir. 1992) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). To be clearly established, "'there must be a Supreme Court or other Tenth Circuit decision on point, or the clearly established weight of authority from other circuits must have found the law to be as the plaintiff maintains.'" *Murrell v. School District No. 1, Denver*, 186 F.3d 1238, 1251 (10th Cir. 1999) (quoting *Medina v. City & County of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992)).   Here, plaintiff does not cite a single case that would allow the court to find that the contours of any alleged violation were clearly established at the time of the hearing.   That deficiency is legally significant.   *See Douglas v. Dobbs*, 419 F.3d 1097, 1103 (10th Cir. 2005) (emphasizing that plaintiff "cite[d] to no statutory or case law to support her claim" of a constitutional violation).

Facing a highly similar factual pattern, and applying many of the same principles, the court in *Palmer v. City of Monticello*, 731 F. Supp. 1503 (D. Utah 1990), explained why the defendant was entitled to qualified immunity from plaintiff's claim for violation of a protected property interest in the termination of employment context:

> In *Harlow*, the Supreme Court held that "[w]here an official could be expected to know that certain conduct would violate statutory or constitutional rights, he should

17

be made to hesitate; and a person who suffers injury caused by such conduct may have a cause of action." *Harlow v. Fitzgerald*, 457 U.S. 800, 819 (1981). Deprivation of a property interest without due process is a clear constitutional violation. However, whether or not the Plaintiff had a property interest in continued employment was not clearly established at the time of Plaintiff's termination. If, at the time the action occurred, the law 'was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful.' *Id*. at 818. The Plaintiff must "come forward with facts or allegations sufficient to show both that the defendant's alleged conduct violated the law and that the law was clearly established when the alleged violation occurred." *Pueblo Neighborhood Health Centers, Inc., v. Losavio*, 847 F.2d 642, 646 (10th Cir. 1988). Because the Plaintiff had no clear property interest in continued employment at the time of his termination, the court concludes that [Defendant] had no way of knowing that Plaintiff's due process rights were implicated.

*Id*. at 1508.

Similarly, after the qualified immunity defense was introduced in this case, Mr. Dozier "had the burden, in response to [the] motion to dismiss, of articulating such clearly-established law." *Walker v. City of Orem*, 451 F.3d 1139, 1151 (10th Cir. 2006).[6]   But plaintiff made no attempt to articulate that any alleged violation "was clearly established at the time of the defendant's unlawful conduct such that a reasonable person in the defendant's position would have known that

---

[6] To the extent plaintiff alleges a violation of substantive due process, his claim fails because at the time of the alleged misconduct surrounding his termination, it was not clearly established that Ms. Ferguson violated substantive due process principles. In this exact realm, it is entirely unclear what violates substantive due process. *See Hennigh v. City of Shawnee*, 155 F.3d 1249, 1256-57 (10th Cir. 1998) ("We note that our circuit precedent does not clearly delineate what specific property interests in employment are fundamental, and thus protected by the doctrine of substantive due process doctrine."); *Curtis v. Oklahoma City Public Schools Bd. of Educ*., 147 F.3d 1200, 1215 & n.17 (10th Cir. 1998) (same). Thus, without a clearly established violation, the court cannot pierce the veil of qualified immunity.

18

the alleged conduct violated the federal right." *Saucier*, 533 U.S. at 201.   His failure to make that

showing forecloses his claim for relief.

In sum, to expose Ms. Ferguson to individual liability, plaintiff had the burden both to point

out a cognizable constitutional violation, and more importantly, to prove that the contours of that

violation were clearly established at the time.   At both steps, plaintiff failed.   Mr. Dozier did not

demonstrate a constitutional violation, let alone a violation with clearly established contours.   *See*

*Cragg*, 1996 WL 707208, at * 8 n.8 (finding that the defendant was entitled to qualified immunity

even if plaintiff had alleged a viable procedural due process claim).   Thus, Ms. Ferguson is entitled

to qualified immunity from suit in her individual capacity.

**2.      Official Capacity Suit**

When the court interprets the suit against Ms. Ferguson in her official capacity, the result

is the same: the claim fails.   To begin, a claim against Ms. Ferguson in her official capacity is

treated the same as a claim against the governmental entity, in this case the City.   *See Kentucky*

*v. Graham*, 473 U.S. 159, 166 (1985); *Myers v. Oklahoma County Bd. of County Comm'rs*, 151

F.3d 1313, 1316 n.2 (10th Cir. 1998).   The City is liable for the acts of its employees under §

1983 only if: (1) a municipal employee committed a constitutional violation; and (2) a municipal

policy or custom was the moving force behind that constitutional violation.   *Myers*, 151 F.3d at

1316.     Often stressed, the first factor is critical; there must be an underlying constitutional

violation by an employee before a municipality can be held liable.   *Jennings v. City of Stillwater*,

383 F.3d 1199, 1205 n.1 (10th Cir. 2004) ("[A] municipality cannot be liable for constitutional

violations unless its officers committed a constitutional violation."); *Myers*, 151 F.3d at 1316 (same).

        In this case, Mr. Dozier has not alleged facts that could demonstrate that any employee of the City violated his constitutional rights.  Specifically, the only agent of the City identified under this Count is Ms. Ferguson and, as analyzed above in the context of an individual capacity suit, Mr. Dozier has not established that Ms. Ferguson violated his constitutional rights.  Thus, without an underlying constitutional violation, the City cannot be found liable by a claim against Ms. Ferguson in her official capacity.  *See Marino v. Mayger*, 2004 WL 2801795, at *11 (10th Cir. 2004); *Quint v. Cox*, 348 F. Supp.2d 1243, 1251 (D. Kan. 2004).

**3.    Leave to Amend**

        In plaintiff's response to the motion to dismiss, he asks the court for leave to amend if the court finds that his complaint is lacking.  The court is uncertain exactly what he is alleging in regard to the conduct of Ms. Ferguson; there is some possibility that he is alleging a violation of more than a property interest.  For instance, in his complaint, he does allege that he "has engaged in protected activity by availing himself to the due process rights afforded him under both the Kansas and United States Constitutions by filing and pursuing his administrative remedies."  He also alleges that Ms. Ferguson's actions "were unlawful and retaliatory in nature against Mr. Dozier and a violation of his rights. . . ."  Similarly, in his response to the motion to dismiss, he states that his complaint "alleges several different theories in which Defendant Postoak Ferguson . . . took actions directed towards Mr. Dozier that deprived him of his protected rights."

The defendants' motion to dismiss, as well as this memorandum and order, only addresses the allegation that Mr. Dozier was denied a protected property interest.  Given the imprecision of plaintiff's allegations from the face of his complaint, the court believes that the most appropriate course of action is to allow plaintiff the opportunity to file a second amended complaint.  The Federal Rules of Civil Procedure state that leave to amend is to "be freely given when justice so requires."  Fed.R.Civ.P. 15(a).  The decision whether to grant leave to amend is within the discretion of the district court.  *Hayes v. Whitman*, 264 F.3d 1017, 1026 (10th Cir. 2001).  In abundance of caution and in the interest of justice, the court, therefore, will grant the defendants' motions to dismiss without prejudice to plaintiff filing a second amended complaint on or before August 14, 2006, reasserting his claim as to Count IV.

## IV.   CONCLUSION

For the reasons explained above, the court grants the defendants' motion to dismiss all four counts of the complaint, subject to plaintiff filing a second amended complaint as to Count IV on or before August 14, 2006.

**IT IS THEREFORE ORDERED BY THE COURT THAT** the defendants' motion to dismiss (Doc. 4) is granted, subject to plaintiff filing a second amended complaint, as set forth above.

**IT IS SO ORDERED.**

Dated this 31st day of July, 2006

/s/ John W. Lungstrum
John W. Lungstrum
United States District Judge

22